[Cite as *State v. Bowers*, 2017-Ohio-2726.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-T-0049** |
| TARIQ ABBAS BOWERS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2015 CR 00112.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Edward F. Borkowski, Jr.*, P.O. Box 609151, Cleveland, OH 44109 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Tariq Abbas Bowers, appeals from the May 10, 2016, judgment of the Trumbull County Court of Common Pleas, convicting him of two counts of trafficking in drugs, following a jury trial. For the reasons that follow, the trial court's final judgment is affirmed.

{¶2} This case stems from events that occurred in April 2014. After a warrant was issued for his arrest, appellant turned himself in to the Warren Police Department.

On March 18, 2015, appellant was indicted by the Trumbull County Grand Jury on two counts of trafficking, in violation of R.C. 2925.03(A)(2): Count One, trafficking in cocaine, a felony of the first degree (R.C. 2925.03(C)(4)(f)); and Count Two, trafficking in heroin, a felony of the third degree (R.C. 2925.03(C)(6)(d)). Both counts carry forfeiture specifications under R.C. 2941.1417(A) and R.C. 2981.02(A)(2) & (3)(a).

{¶3} At trial, it was established that Kimberlee Zarick was working as manager of the Downtown Motor Inn in Warren, Ohio, during April 2014. According to Ms. Zarick, appellant checked in to the motel on April 2, 2014, paid for at least one night, and was given a key card to Room 105. The room was paid for in cash, one or two nights at a time, for a total of 27 consecutive nights. Ms. Zarick testified that a copy of each patron's driver's license is made when he or she pays for a room, regardless of who initially registered the room. At trial, Ms. Zarick had records for Room 105 for the month of April 2014, which included a copy of appellant's license and that of his brother, Andre Bowers. Ms. Zarick testified this meant that Andre also paid for the room at some point during those 27 nights. She further testified that she only received payment from appellant, but that other motel employees received payment from Andre. Ms. Zarick stated there is no way to determine from the motel records how many times appellant paid, how many times Andre paid, or for which nights either of them paid. Ms. Zarick testified that she works at the motel five days per week; she saw appellant at the motel on approximately 13-14 days of the 27 days in April, but she never saw Andre while she was on duty.

{¶4} On April 28, 2014, Ms. Zarick was called to Room 105 by a housekeeper. No one else was present in the room. Ms. Zarick testified that she noticed a drawer in a

bedside table appeared to be broken. She opened the drawer and discovered what she thought might be a "chunk of cocaine" inside. Ms. Zarick called a friend, who was an employee of the Warren Municipal Court, and inquired what she should do. Shortly thereafter, Ms. Zarick received a phone call from Detective Melanie Gambill, who had been contacted by the court employee.

{¶5} Detective Gambill and Detective Trevor Sumption arrived at the motel. They conducted surveillance of Room 105, and a K9 unit conducted a drug sniff in the exterior hallway of the motel. At no time during their surveillance did they see appellant at the motel nor did they see anyone else enter the room. The detectives eventually obtained a search warrant for Room 105. They confiscated the following items while executing the warrant: 39 plastic bag "tips" containing crack cocaine; 5.3 grams of heroin in blue glassine bindles; packaging materials (unused plastic bags and glassine bindles, rubber bands, lotto cards cut into squares); two digital scales; two police scanners; a razor blade; a coffee pot with white residue (which field tested positive for cocaine); a box of .38 special ammunition with 19 live rounds; an owner's manual and a cardboard cutout for an M-11 semi-automatic pistol; and appellant's driver's license. No other identification was found in the room. The confiscated items were introduced as exhibits during trial. Photographs were taken of the room during the search but were later lost during a power outage at the police station.

{¶6} Ms. Zarick testified that appellant's key card access was deactivated. On the next day, April 29, 2014, she heard a noise and witnessed appellant attempting to kick in the door to Room 105. He then proceeded to break in by breaking the window. Appellant was in the room and gone by the time police arrived.

3

{¶7} At the conclusion of the state's case, appellant made a Crim.R. 29 motion for acquittal, which was denied. The defense rested without presenting any evidence and renewed its Crim.R. 29 motion; the motion was again denied.

{¶8} The jury found appellant guilty on both counts for trafficking cocaine in an amount that equals or exceeds 27 grams and trafficking in heroin in an amount that equals or exceeds 5 grams.

{¶9} The trial court sentenced appellant to mandatory eleven years on Count One, with a mandatory $10,000 fine, and thirty-six months on Count Two, with a mandatory $5,000 fine. The trial court ordered the sentences to run concurrent for a total term of imprisonment of eleven years. Appellant was advised that post-release control is mandatory for five years as to Count One and optional up to a maximum of three years as to Count Two.

{¶10} Appellant filed a timely appeal from his conviction and raises six assignments of error, which we review out of numerical order for ease of discussion.

{¶11} Appellant's third assignment of error asserts:

{¶12} "The trial court erred by permitting the introduction of irrelevant and prejudicial exhibits."

{¶13} Before trial, defense counsel moved in limine to exclude from evidence the owner's manual for an M-11 semi-automatic pistol and the box of ammunition, which were found during the search of the motel room. After hearing arguments from both sides, the trial court denied the motion but left open the possibility of revisiting the issue if it arose during trial, preferring to "see how it flows in."

4

{¶14} At trial, the state introduced these items of evidence during Detective Gambill's testimony regarding the items found during the search. Defense counsel did not object to their admission at that time. After the state rested its case, the parties discussed admission of the state's exhibits. Defense counsel objected to the admission of the firearms-related exhibits during this discussion, and the trial court overruled the objection.

{¶15} "To properly preserve an objection to that specific evidence for purposes of appeal, an objection to the court's ruling must be made when the evidentiary issue arises at trial." *State v. Pennington*, 4th Dist. Lawrence No. 15CA5, 2016-Ohio-2792, ¶19 (citations omitted). Because defense counsel did not object to admission of the evidence when the issue arose during the trial, appellant has forfeited all but plain error review on appeal. *See State v. Grubb*, 28 Ohio St.3d 199, 201 (1986) (holding that a ruling on a motion in limine is tentative and interlocutory and does not preserve the error for appeal). To constitute plain error, an error must be an obvious deviation from a legal rule that affected the outcome. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶22 (citations omitted).

{¶16} On appeal, appellant argues he had not been charged with any weapons-related offenses and any mention of the items was irrelevant and prejudicial because it improperly influenced the jury.

{¶17} "Relevant evidence" is defined in Evid.R. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pursuant to Evid.R. 402, irrelevant evidence is not admissible. Relevant evidence is

5

also not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). The exclusion of irrelevant or unfairly prejudicial evidence is mandatory, not discretionary. *See* Evid.R. 402 & 403(A).

{¶18} We have held that evidence regarding firearms has some prejudicial effect in a criminal case, but it may also have probative value when the offender is charged with drug offenses. *State v. Ogletree*, 11th Dist. Portage No. 2005-P-0040, 2006-Ohio-6107, ¶16, citing *State v. McKinney*, 11th Dist. Lake No. 2000-L-210, 2002-Ohio-4360, ¶30, and *State v. Smith*, 5th Dist. Stark No. CA-8715, 1992 WL 61363, *3 (Mar. 16, 1992). """Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment.""" *Id.*, quoting *Smith*, *supra*, at *3, quoting *United States v. Weiner*, 534 F.2d 15, 18 (2d Cir.1976).

{¶19} Here, the firearm evidence had probative value and was therefore relevant. Two police scanners were also found in the motel room, which suggests appellant knew he was conducting illegal activity and was concerned about police presence. *Cf. id.* at ¶17, citing *State v. Williams,* 2d Dist. Montgomery No. 20271, 2005-Ohio-1597, ¶62.

{¶20} We do not deny that introducing the owner's manual and box of ammunition would have had some prejudicial effect; however, we also note that no firearms were recovered at the scene and introduced at trial. Any danger of unfair

6

prejudice in this matter was not substantially outweighed by the probative value of the firearm evidence. Admission of the evidence was not plain error.

{¶21} Appellant's third assignment of error is without merit.

{¶22} Appellant's fifth assignment of error states:

{¶23} "Appellant's counsel was ineffective."

{¶24} Appellant argues his trial counsel was ineffective for failing to object at trial to the admission of the owner's manual and box of ammunition. Because we found above that the admission of this evidence was not error, this argument is not well taken.

{¶25} Appellant also argues his trial counsel was ineffective during the hearing on his motion to suppress evidence because he failed to call necessary witnesses and inadequately argued the insufficiency of the search warrant affidavit.

{¶26} In order to prevail on an ineffective assistance of counsel claim, an appellant must demonstrate that trial counsel's performance fell "below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraph two of the syllabus (adopting the test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984)). There is a general presumption that trial counsel's conduct is within the broad range of professional assistance, *id.* at 142, and debatable trial tactics do not generally constitute deficient performance. *State v. Phillips,* 74 Ohio St.3d 72, 85 (1995). In order to show prejudice, the appellant must demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Bradley*, *supra*, at paragraph three of the syllabus.

**{¶27}** Appellant first asserts his trial counsel was ineffective because he failed to call the housekeeper as a witness during the suppression hearing. Because the housekeeper's testimony is not in the record, however, we cannot definitively say whether trial counsel was ineffective for not calling her to testify. "These claims are often better suited for postconviction proceedings. Addressing them in a postconviction proceeding would allow testimony in the record as to what the witnesses would have testified[.]" *State v. Love*, 11th Dist. Ashtabula No. 2013-A-0062, 2014-Ohio-4287, ¶34, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 228 (1983). This argument is not well taken.

**{¶28}** Appellant further asserts his trial counsel was ineffective for filing an inadequate motion to suppress. Appellant argues that the basis for trial counsel's motion to suppress is not discernible from the face of the motion. In his appellate brief, appellant states:

> The one-page motion cites to no authority, and only makes a brief mention of some of the facts. While it mentions in passing the affidavit upon which the warrant was based (meaning, presumably, that Appellant was claiming the affidavit was not sufficient to establish probable cause), it does not argue that the affidavit was lacking, or offer any facts or argument as to why the search was in violation of Appellant's rights.

**{¶29}** Although appellant criticizes trial counsel for failing to adequately identify the basis of the motion to suppress, he does not provide this court with any facts or arguments as to why the search was in violation of appellant's rights. The transcript from the motion to suppress hearing does not raise any concerns regarding a violation of appellant's rights. Therefore, assuming without deciding that the motion was

8

inadequate, appellant has failed to demonstrate that he was prejudiced by said inadequacy. This argument is not well taken.

**{¶30}** Appellant's fifth assignment of error is without merit.

**{¶31}** Appellant's first and second assignments of error provide:

[1.] Appellant's convictions were against the sufficiency of the evidence.

[2.] Appellant's convictions were against the manifest weight of the evidence.

**{¶32}** Under his first assignment of error, appellant argues the trial court erred in overruling his Crim.R. 29(A) motion for acquittal because his convictions were not supported by sufficient evidence.

**{¶33}** Pursuant to Crim.R. 29(A), a trial court "shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A challenge to the sufficiency of the evidence raises a question of law as to whether the prosecution met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997) (citations omitted); *see also State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶25 (citations omitted).

**{¶34}** "In reviewing the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Smith*, 80 Ohio St.3d 89, 113 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v.*

9

*Virginia*, 443 U.S. 307 (1979); *see also State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

**{¶35}** Under his second assignment of error, appellant asserts the jury lost its way because the convictions were against the manifest weight of the evidence.

**{¶36}** In determining whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶21; *see also State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

**{¶37}** Appellant was convicted of trafficking in cocaine and trafficking in heroin, in violation of R.C. 2925.03(A)(2), (C)(4)(f), & (C)(6)(d). The prosecution was required to prove, beyond a reasonable doubt, that appellant did knowingly "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute [cocaine and heroin], when the offender knows or has reasonable cause to believe that the [cocaine and heroin] is intended for sale or resale by the offender or another person." R.C. 2925.03(A)(2).

**{¶38}** The state presented evidence that the motel room was registered in appellant's name and that he was given the only key card to Room 105. The room was paid for in cash, one or two nights at a time, for a total of 27 nights. The motel manager

10

testified a copy of each patron's driver's license is made when they pay for a room, regardless of who actually registered the room. The motel records for Room 105 on the relevant dates include a copy of appellant's driver's license and of his brother's driver's license. The manager further testified that she received payment from appellant, saw appellant approximately 13-14 days out of the 27 days paid for, and never saw his brother.

{¶39} The state also presented evidence that police detectives discovered the following items in Room 105 while executing the search warrant on April 28, 2014: 39 plastic bag "tips" containing crack cocaine; 5.3 grams of heroin in blue glassine bindles; packaging materials (unused plastic bags and glassine bindles, rubber bands, lotto cards cut into squares); two digital scales; two police scanners; a razor blade; a coffee pot with white residue (which field tested positive for cocaine); a box of .38 special ammunition with 19 live rounds; an owner's manual and a cardboard cutout for an M-11 semi-automatic pistol; and appellant's driver's license. No other identification was found in the room. The motel manager testified that the next day, April 29, 2014, she witnessed appellant break into Room 105 through a window. Appellant was gone by the time police arrived.

{¶40} Appellant stipulated to the presence of cocaine and heroin found in Room 105. He argues on appeal that the evidence against him is entirely circumstantial and requires a "stacking" of inferences to reach the conclusion that the drugs were being trafficked and that he was the offender. He specifically asserts that his convictions cannot be upheld because his brother also had access to and use of the motel room.

{¶41} It is well-settled that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks*, *supra*, at paragraph one of the syllabus. "Circumstantial evidence has been defined as testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶22, citing *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988). An inference is "a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven." *State v. Nevius*, 147 Ohio St. 263, 274 (1947) (citation omitted). "It consequently follows that 'when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be rationally inferred according to common experience." *State v. Armstrong*, 11th Dist. Portage No. 2015-P-0075, 2016-Ohio-7841, ¶22, quoting *Windle*, *supra*, at ¶34.

{¶42} "A conviction, however, may not be based upon the 'stacking of inferences.'" *Payne*, *supra*, at ¶23. "When an inference, which forms the basis of a conviction, is drawn solely from another inference and that inference is not supported by any additional facts or inferences drawn from other established facts, the conviction is improper." *Id.*; *see also State v. Maynard*, 10th Dist. Franklin No. 11AP-697, 2012-Ohio-2946, ¶27. "The rule against inference-stacking essentially forbids the drawing of an inference from evidence, which is too uncertain or speculative or which raises merely a possibility or conjecture. While reasonable inferences may be drawn from the facts

12

and conditions established, they cannot be drawn from facts or conditions merely assumed." *Armstrong*, *supra*, at ¶23.

{¶43} Here, appellant was not present at the time the drugs were discovered, and none of the items confiscated from the room were tested for fingerprints. We do not agree, however, that there was evidence that anyone other than appellant had access to and use of the room. It would be an inference to reach the conclusion that appellant's brother had access to and use of the room merely because he paid for the room at some point within the 27 days, as he was not issued a key card to Room 105. There was direct evidence, on the other hand, that appellant had access to and use of the room: Ms. Zarick testified appellant was issued the only key card to Room 105 and that she saw him at the motel on 13 or 14 occasions during the 27 days. The detectives testified appellant's license was found inside, and no other identifying information was discovered in the room. Thus, while the nature of the evidence required the jury to infer that the drugs were being trafficked, the jury was not required to impermissibly "stack" another inference to reach the conclusion that such trafficking was done by appellant.

{¶44} Based on the foregoing, we find appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.

{¶45} Appellant's first and second assignments of error are without merit.

{¶46} As his fourth assignment of error, appellant asserts:

{¶47} "Appellant was denied a fair trial due to prosecutorial misconduct."

{¶48} Appellant argues the prosecutor engaged in misconduct during closing arguments by vouching for the state's key witness, improperly suggesting appellant had a burden of proof, and impugning defense counsel.

13

**{¶49}** "The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. * * * It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury." *State v. Smith*, 14 Ohio St.3d 13, 13-14 (1984), citing *State v. Woodards*, 6 Ohio St.2d 14, 26 (1966), *State v. Liberatore*, 69 Ohio St.2d 583, 589 (1982), and *United States v. Dorr*, 636 F.2d 117 (5th Cir.1981).

> [T]he prosecution must avoid insinuations and assertions which are calculated to mislead the jury. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. Moreover, * * * an attorney is not to allude to matters which will not be supported by admissible evidence, and '* * * [a] lawyer should not make unfair or derogatory personal reference to opposing counsel.'

*Id.* at 14 (internal citations omitted), quoting the Code of Professional Responsibility. "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *Id.* (citation omitted).

**{¶50}** "In making a determination of whether the remarks were prejudicial, an appellate court must consider all relevant factors, including: (1) the nature of the closing remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Moore*, 97 Ohio App.3d 137, 143 (11th Dist.1994), citing *State v. Clark*, 40 Ohio App.2d 365, 373 (8th Dist.1974), and *State v. Owens*, 11th Dist. Lake No. 89-L-14-047, 1990 WL 174128, *1 (Nov. 9, 1990).

**{¶51}** Appellant first argues the prosecutor improperly vouched for the state's key witness when he stated, "Now, Kimberlee Zarick is a very believable witness."

14

Defense counsel objected to the statement. The trial court sustained the objection and stated, "It's up to the Jury to determine who's believable." The trial court also gave a general instruction to the jury on witness credibility. As a result, we find the comment was improper but do not find this comment prejudicially affected appellant's substantial rights.

**{¶52}** Appellant next argues the prosecutor engaged in improper "burden-shifting" by noting the defense did not call appellant's brother as a witness to support his defense that the offender was actually his brother. The prosecutor stated that the defense also had "a subpoena power." Defense counsel objected, and the trial court immediately sustained the objection. Defense counsel then requested a sidebar, at which time he moved for a mistrial. The trial court instructed the prosecutor he could discuss appellant's brother but not the fact that appellant did not call him as a witness. The prosecutor then stated to the jury that "Andre Bowers could have got on the witness stand and said - -." Defense counsel again objected, and the objection was sustained. Although no curative instruction was given, we do not find these comments equate to improper burden shifting. *See, e.g.*, *State v. Leach*, 150 Ohio App.3d 567, 2002-Ohio-6654, ¶48 (1st Dist.2002) (citations omitted) ("Pointing out the failure of a defendant to subpoena witnesses to prove his theory of the case does not constitute shifting-of-the-burden misconduct."); *see also State v. Carter*, 7th Dist. Columbiana No. 84-C-55, 1985 WL 4801, *4 (Dec. 27, 1985), citing *State v. Champion*, 109 Ohio St. 282, 289 (1924) ("if a witness known to be present at the time a vital act takes place fails to be called and his absence is not accounted for by the party in whose favor he would naturally be

expected to testify, it is not improper for counsel upon the other side to make comment").

**{¶53}** Appellant further argues the prosecutor impugned defense counsel by stating he was attempting "to sell [the jury] hurricane insurance for your house in Ohio." Defense counsel objected and requested a sidebar. The defense again moved for a mistrial, which the trial court denied. We do not find this comment amounted to prosecutorial misconduct. *See, e.g., State v. Novak*, 11th Dist. Lake No. 2003-L-077, 2005-Ohio-563, ¶40-42, citing *State v. Brown*, 38 Ohio St.3d 305, 317 (1988) ("[t]here is no requirement that a prosecutor's language must be neutral in its characterizations of the evidence or defense strategy").

**{¶54}** Appellant's fourth assignment of error is without merit.

**{¶55}** Finally, appellant asserts, as his sixth assignment of error:

**{¶56}** "The sentences imposed are contrary to law."

**{¶57}** Appellant argues his sentence is contrary to law because the trial court imposed maximum sentences without properly considering and weighing the relevant sentencing factors found in R.C. 2929.11 and R.C. 2929.12.

**{¶58}** "R.C. 2953.08(G) and the clear and convincing standard should be applied to determine whether a felony sentence is contrary to law." *State v. Bryant,* 11th Dist. Trumbull No. 2015-T-0100, 2016-Ohio-4928, ¶54, citing *State v. Ernest,* 11th Dist. Lake No. 2014-L-108, 2015-Ohio-2983, ¶60. *See also State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶1, citing R.C. 2953.08(G)(2) ("an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing

16

evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law").

**{¶59}** A court imposing a felony sentence is required to consider the seriousness and recidivism factors found in R.C. 2929.12 to ensure the sentence complies with the overriding principles of felony sentencing as stated in R.C. 2929.11. *See* R.C. 2929.12(A). The trial court, however, "is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12).'" *State v. Webb,* 11th Dist. Lake No. 2003-L-078, 2004-Ohio-4198, ¶10, quoting *State v. Arnett,* 88 Ohio St.3d 208, 215 (2000); *see also State v. McGinnis,* 11th Dist. Lake No. 2015-L-096, 2016-Ohio-1362, ¶8. Further, the "trial court is not required to give any particular weight or emphasis to a given set of circumstances" when considering the statutory factors. *State v. Delmanzo,* 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶23.

**{¶60}** Before pronouncing its sentence, the trial court stated:

> I appreciate the arguments of counsel. Again, I'm quite aware of the facts of this particular case. I'm quite aware of the facts of his background as a result of the presentence investigation.
>
> The important things in this case are his record, to start with. Again, trafficking at an early stage where he went to a year in prison. Immediately thereafter, a possession, as opposed to a trafficking, but he was obviously trafficking because you don't have that kind of dope around for personal use. A subsequent possession. And now this trafficking here containing very, very large amounts of drugs.
>
> Mr. Bowers, you've spent your life selling dope to people throughout Ohio and in particular in Trumbull County. We have a lot of people that are dying from that right now. This is not something that's a lark. This is a criminal – serious, serious criminal offense. And there's a big penalty for being involved in this. And you've done a lifetime of this. And there's no doubt – and

17

the State is right and I'm convince – as soon as you get out of prison, you're gonna start dealing again, because that's all you've ever done. That's probably all you'll ever know how to do. You do need to be put away, but the sentence has to be proportionate.

{¶61} In light of appellant's lengthy criminal history and the amount of drugs involved herein, we do not find that imposing the maximum sentences permitted under the statute was disproportionate to the offenses. Additionally, in its final entry of sentence, the trial court stated it "has considered the record, oral statements, pre-sentence investigation report and any victim impact statement, as well as the principles and purposes of sentencing under O.R.C. Section 2929.11, and has balanced the seriousness and recidivism factors of O.R.C. Section 2929.12." "This suggests the trial court did, in fact, consider the requisite statutory factors." *State v. Goodnight,* 11th Dist. Lake No. 2008-L-029, 2009-Ohio-2951, ¶17, citing *State v. Kearns*, 11th Dist. Lake No. 2007-L-047, 2007-Ohio-7117, ¶10. Appellant has otherwise failed to demonstrate that the record does not support his sentence.

{¶62} Appellant's sixth assignment of error is without merit.

{¶63} The judgment of the Trumbull County Court of Common pleas is affirmed.


CYNTHIA WESTCOTT RICE, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.


_____


COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶64} This writer agrees with the trial court's judgment and the majority's well-reasoned opinion to affirm appellant's trafficking in drugs conviction and sentence. I

18

merely write separately regarding appellant's prosecutorial misconduct claims contained in his fourth assignment of error.

{¶65} "A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Keenan* (1993), 66 Ohio St.3d 402, 405 * * *; *State v. Gest* (1995), 108 Ohio App.3d 248, 257 * * *. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips* (1982), 455 U.S. 209 * * *. The effect of the prosecutor's misconduct must be considered in light of the whole trial. *State v. Durr* (1991), 58 Ohio St.3d 86, 94 * * *; *State v. Maurer* (1984), 15 Ohio St.3d 239, 266 * * *. A prosecutor is afforded wide latitude during closing argument; it is within the trial court's sound discretion to determine whether a comment has gone too far. *State v. Benge* (1996), 75 Ohio St.3d 136 * * *." (Parallel citations omitted.) *State v. Gonzalez*, 8th Dist. Cuyahoga No. 96102, 2011-Ohio-5253, ¶12.

{¶66} Appellant alleges the prosecutor engaged in misconduct during closing arguments by vouching for the state's key witness when he stated, "Now, Kimberlee Zarick is a very believable witness." Defense counsel objected. The trial court sustained the objection and stated, "It's up to the Jury to determine who's believable." The trial court also gave a general instruction to the jury on witness credibility. I agree with the majority that this comment was improper.

{¶67} I also find the following comments improper. Appellant claims the prosecutor engaged in improper burden shifting by indicating that the defense did not call appellant's brother as a witness to support his defense that the offender was

19

actually his brother. The prosecutor later stated to the jury that "Andre Bowers could have got on the witness stand and said - -." Defense counsel objected. The trial court sustained the objection. No curative instruction was given. However, I agree with the majority that the comments do not equate to improper burden shifting. Appellant further maintains the prosecutor impugned defense counsel by stating he was attempting "to sell [the jury] hurricane insurance for your house in Ohio." Defense counsel objected and moved for a mistrial. The trial court denied the request.

{¶68} Due to the strength of the underlying evidence, this writer agrees with the majority's decision to affirm. I find the prosecutor's comments, as pointed out by appellant, were improper. However, because these "errors" did not deprive appellant of a fair trial in this case, and given the overwhelming evidence of guilt properly before the jury, they are harmless. *See e.g. State v. Moore*, 11th Dist. Ashtabula No. 2009-A-0024, 2010-Ohio-2407, ¶63; *State v. Edwards*, 11th Dist. Lake No. 2012-L-034, 2013-Ohio-1290, ¶40.

{¶69} Accordingly, I concur.